HENRY MACKANESS PROWITT and Others, Respond-
ents, v. WASHINGTON RODMAN and Others, Appel-
lants.

*Will—Devise—Remainder—Issue—Children and Grandchildren.*

The testator gave certain property to his daughter, Mrs. Prowitt, during
her life, and, after her death, " to such children as should be living at the time
of her death." Held, under the circumstances of the case, that this expression
was not limited in its effect to the immediate offspring of Mrs. Prowitt, but
included remoter descendants or grandchildren.

The expression " children then living " may mean " lawful issue," or remoter
descendants, if such was the intention of the testator, to be gathered from
other parts of his will. In the case of a contingent future gift to the children
of a first taker, followed by a limitation over for want of such, the presump-
tion is in favor of the first taker's posterity, to his remoter descendants, in
preference to the donee over.

THIS action was commenced to obtain a judicial construction of
the will of Thomas Mackaness, which bore date of February 15,
1806. The testator died prior to March 19, 1807, the will having
been proved on that day, in the county of Orange. His wife died
before him.

He left three daughters : Elizabeth, then the wife of Thomas
Harvey ; Mary, then the wife of Mr. Prowitt ; Margaret, then
unmarried, afterward the wife of Charles Ludlow.

At the death of the testator Mrs. Harvey had two children
living, and Mrs. Prowitt had three.

Mrs. Mary Prowitt outlived both of her sisters. She also out-
lived all her children, but left grandchildren and great-grand-
children. She died in 1857.

One daughter of each sister survived Mrs. Prowitt. The
questions arise upon the claims of the descendants of these chil-
dren, as against the descendants of Mrs. Prowitt. '

The case was tried at the Special Term, where judgment was
rendered in favor of Mrs. Prowitt's descendants, and adversely
to the Defendants, Mary Rodman and others, and adjudging costs
to all parties out of the fund.

The General Term of the First District affirmed the judgment, and the representatives of Mary Rodman now appeal to this Court.

In the introduction to his will, the testator gives his soul to God in Christ, and adds : " And, as to such worldly estate and effects wherewith it has pleased God to bless me, I give, devise, and bequeath the same in manner following : "

In the first clause he gives to his daughter, Elizabeth Harvey, during her life, certain premises, situate on Front and Depeyster streets in the city of New York, and after her decease, to such child or children as she may then have living ; if none, or after their death, to her husband for life, with remainder over to his daughter Mary and his daughter Margaret, in equal parts.

He then proceeds (omitting superfluities) as follows :

" Secondly :—I give unto Thomas Harvey, Divie Bethune, and John Huyler, and their heirs, my lot of ground, with a brew-house and malt-house thereon, and all the fixtures and utensils belonging to the said brew-house and malt-house, to the use of said Harvey, Bethune, and Huyler during the life of my daughter Mary Prowitt, and upon the trusts that they, during the life of my said daughter Mary Prowitt, apply the rents and profits for her sole and separate use ; and after the decease of my said daughter Mary Prowitt, to the use of all and every the child and children of my said daughter Mary Prowitt, lawfully to be begotten, then living ; if one child only, to him or her the whole, and to his or her heirs and assigns forever ; and if more than one child, then to them, their heirs and assigns forever, in equal parts to be divided ; and to the several and respective heirs of the body and bodies of all and every such child or children lawfully issuing, and to, for, or upon no other use, trust, intent, or purpose whatsoever ; and I do accordingly, from and immediately after the decease of my said daughter Mary Prowitt, give and devise, all and singular the lots of ground, houses, with all the fixtures, utensils, &c., so as aforesaid given and devised in trust for her sole use and benefit, during the term of her life, unto such child or children as my said daughter Mary Prowitt shall then have

living; if one child only, to him or her the whole, and to his or her heirs or assigns forever; and if more than one child, then to them, their heirs and assigns forever, in equal parts to be divided; and in case any such child or children should happen to die before the decease of their said mother, leaving lawful issue, then I do give and devise the part or parts of such child or children so dying unto the several and respective heirs of the body and bodies of all and every such child and children lawfully issuing, and to their several and respective heirs and assigns forever, in equal parts to be divided; provided, that it shall be lawful for said Harvey, Bethune, and Huyler, from time to time during the life of my daughter Mary Prowitt, and after her decease, during the minority of the child or children of my said daughter Mary Prowitt, or who, for the time being, shall by virtue of this my will be entitled in possession to the said lots of ground, or to receive and take the rents, issues, and profits thereof, or of any part thereof, by indenture, under hand and seal, to demise · the said lot of ground, &c., for any term during the life of my said daughter; and in case my said daughter should die during the minority of her children or child, then for any term during such minority; and in case my said daughter Mary Prowitt shall not leave a child living at the time of her death, then I give and devise all the said real estate or property so given and devised in trust for her use and benefit during her natural life, and to her children or child after her decease, to my daughter Elizabeth Harvey, and my daughter Margaret Thornton Mackaness, their heirs and assigns forever, in equal parts to be divided; but if either of my said two last-named children shall then be dead, and shall have a child or children then living, the part of her so being dead I give and devise to such child or children; if one only, to him or her, and to his or her heirs or assigns forever; and if more than one, then to them, their heirs and assigns forever, in equal parts to be divided."

In the third section of his will, the testator gives to his wife and his daughter Margaret, for life, his farm, with all the stock and utensils thereon.

He then makes the following bequest to his daughter Margaret:

"Fourth:—I give unto my said daughter Margaret Thornton Mackaness, her heirs and assigns forever, my house and lot, No. 32 Partition street, in the city of New York; but if my said daughter Margaret shall die unmarried, and without leaving a child her surviving, then I give the same and also all such other parts of my real and personal estate as by this my will are given to her, to my daughters Elizabeth Harvey and Mary Prowitt, their heirs and assigns forever, in equal parts to be divided; but if my said daughter Margaret shall die either before or after my decease, leaving lawful issue, then I do give, devise, and bequeath the part and parts, share and shares of my real and personal estate by this my will given, devised, and bequeathed to her, unto such child or children; if one only, to him or her solely, and his or her heirs and assigns forever; if more than one, to them, their heirs and assigns forever, equally to be divided between them, share and share alike; and in case my said daughter Margaret Thornton Mackaness shall die without lawful issue, and if, at her death, either of my said daughters, Elizabeth Harvey and Mary Prowitt, shall then be dead, and shall have a child or children then living, I give, devise, and bequeath the part or parts, share or shares of my real and personal estate, by this my will devised and bequeathed to their respective mothers so being dead, to such child or children; if only one, to him or her the whole, and to his or her heirs and assigns forever; and if more than one, to them, their heirs and assigns forever, in equal parts to be divided."

In the eighth section he gives to his daughter Elizabeth Harvey five thousand dollars; to his grandson, Thomas M. Harvey, two thousand five hundred dollars, and twelve hundred and fifty dollars to the same trustees before-named, to invest, receive the interest, and pay the same to Mrs. Prowitt, towards the better education and maintenance of her children until they became of the age of twenty-one years or married, whichever should first happen; and as the children severally "shall become of age or marry, as aforesaid, pay to such children, if more than one shall arrive at such age or marry, their several and respective equal proportions

of the said principal sum of twelve hundred and fifty dollars, and all the interest that may then be due thereon; but if one only, then the whole of said sum to him or her."

In the same article the testator gives his wife the use of fifteen thousand dollars during her life, and after her death gives five thousand dollars thereof unto each of his daughters Elizabeth and Margaret.

The remaining five thousand dollars is placed in the hands of the same trustees, to invest and pay the interest to Mrs. Prowitt during her life, "and after her decease then to pay the said sum of five thousand dollars, and all the interest that may at her decease be due thereon, unto and amongst such children or child as my said daughter [Mrs. Prowitt] may have living at the time of her death, in equal parts to be divided, as they shall severally arrive at the age of twenty-one years or marry, whichever shall first happen; and in case my said daughter Mary Prowitt shall die during the minority of her children or child, then I direct that the said sum shall by my said trustees be kept at interest, and such interest applied towards their maintenance and education until they severally arrive at the age of twenty-one years or marry; and that the said principal sum of five thousand dollars, and the interest due thereon, be equally divided between and paid to the said children or child of my said daughter Mary Prowitt, as they shall severally attain the age of twenty-one years or marry; and if one only of such children arrive at the age of twenty-one years or marry, then to him or her solely, his, her, or their executors, administrators, and assigns forever; but if either of my said children shall, at the time of the death of my said wife, be dead, and shall have a child or children then living, the part or share of the said fifteen thousand dollars so bequeathed for the use and benefit of her so being dead, I give unto such child or children; if only one, to him or her the whole; and if more than one, to and among them in equal parts to be divided, and to his, her, and their executors, administrators, and assigns forever; and my said executors shall place out at interest or invest three thousand seven hundred and fifty dollars, and receive

the interest, and pay the same into the hands of my said daughter Mary Prowitt, during her life, for her own use. And after the decease of my said daughter Mary Prowitt, I give the said principal sum of three thousand seven hundred and fifty dollars to such child or children as the said Mary Prowitt may then have living; if one only, to him or her the whole; and if more than one, to and among them, in equal parts to be divided, and to his or her, and their executors, administrators, and assigns forever; but if my said daughter Mary Prowitt shall not have any child living at the time of her decease, then I give and bequeath the said principal sum of $3,750 to and among my other two children, Elizabeth and Margaret, in equal parts to be divided, their executors, administrators, and assigns forever; but if either of my said two last-named children shall then be dead, and shall have a child or children then living, the part or share of the one so being dead, I give and bequeath to her child or children; if one only, to him or her the whole; and if more than one, to and among them, in equal parts to be divided, and to his, her, and their executors, administrators, and assigns forever. And all the rest, residue, and remainder of my estate, real and personal, whatsoever and wheresoever, which I may die seized or possessed of, or entitled to, I give, devise, and bequeath, in manner following—that is to say: one equal fourth part to my said wife, her heirs, executors, administrators, and assigns forever; and one other equal fourth part I give unto my said daughter Elizabeth, her heirs, executors, administrators, and assigns forever; and one other equal fourth of the said residue I give unto my said daughter Margaret, her heirs, executors, administrators, and assigns forever. And the remaining one equal undivided fourth part I give unto said Harvey, Bethune, and Huyler, upon the trusts that they shall place the said fourth part out at interest, or invest the same and receive the interest thereof, and to pay the same into the hands of my said daughter Mary Prowitt, during the term of her life, and, after her decease, then to pay the whole of said fourth part, and all the interest that may at her decease be due thereon, unto and amongst such child or children as my

said daughter Mary Prowitt may have living at the time of her death, their executors, administrators, and assigns forever, in equal parts to be divided, as they shall severally arrive at the age of twenty-one years or marry, whichever shall first happen; and in case my said daughter Mary Prowitt shall die during the minority of her children or child, then I direct that the said sum or sums shall by my said trustees be kept at interest, and such interest applied towards their, his or her maintenance and education, until they severally arrive at the age of twenty-one years or marry; and that the said principal sum, and the interest due thereon, be equally divided between and paid to the said children or child of my said daughter Mary Prowitt, as they shall severally attain the age of twenty-one years or marry; and if one only of such children arrive at the age of twenty-one years or marry, then to him or her solely, his or her or their executors, administrators, and assigns forever.

And I do hereby nominate, constitute, and appoint my said wife, Jane Mackaness, my said son-in-law, Thomas Harvey, and my friends, George Warner, sail-maker, and Robert Gosman, house-carpenter, executrix and executors of this my will.".

*Thomas H. Rodman* for Appellants.
*Charles O'Conor* for Respondents.

HUNT, J.—The first question before us arises upon the provisions of the second section of the will. The original Defendant, Mary Rodman, claimed one-half of the real estate here described, as the sole surviving child of Elizabeth Harvey (one of the testator's daughters) living at the death of Mrs. Prowitt. The same claim is continued by her descendants, who have now become the Defendants in this action.

The Plaintiff, on the other hand, contends that Mrs. Prowitt, having survived her immediate offspring, her grandchildren took the remainder in fee simple, in the real estate described in the second section of the will. This is the precise proposition presented upon this branch of the case. The claim of the Appellants to the $5,000 bequeathed in the eighth section for the use of

Mrs. Prowitt during her life, and after her death " to such children as should be living at the time of her death," is based upon the same idea as is the claim to the $3,750 described in the same section, and in nearly the same language.

The three propositions present the same general question of the right of grandchildren to take and hold an estate limited by the expression, " children living at the time of her death."

In the consideration of this question, as it arises under the second section of the will, certain qualifying expressions hereafter to be mentioned, it is supposed, may influence its decision. Upon the eighth section the question is more sharply presented, although I consider these expressions as affecting the construction of the entire will, wherever they may be found.

The first suggestion that arises upon the examination of this will, is the idea that the testator intended to make a disposition of all of his property.

After a pious ejaculation in behalf of his soul, he announces his intention to make a disposition of his " worldly estate and effects." After numerous specific dispositions, he closes his will by giving directions as to " all the rest and residue " of his property. The language includes all his estate, and all his effects. He did not intend to die intestate as to any part of it (Jackson v. Merrill, 6 John. R. 191 ; Finlay v. King's Lessee, 3 Peters, 379 ; Hogan v. Jackson, 1 Cowper, 306).

The next observation is, that the testator intended to make a reasonably equal disposition of his property between his three children. ·

As the value of the real estate given for the benefit of each daughter is not stated in the will, this theory is to some extent conjectural. So far as sums are named, they are equal, and there is nothing to indicate a preference for one daughter over her sisters, or an intention to give to one family a greater inheritance than to another. Mr. Harvey, the husband of one of his daughters, was appointed a trustee and named as one of his executors, while Mr. Prowitt, the husband of his daughter Mary, was evidently in low esteem with the testator, either from a want of

affection for him, or from a distrust of his financial capacity. So far as can be ascertained, however, from the terms of the will, this feeling extended only to exclude Mr. Prowitt from all management of or interference with the portion of the estate destined for his wife ; but not to the diminution of her portion to the slightest extent.

As to each daughter, he seems to have intended that she should have the benefit of one-third of his estate during her life, and that, after her death, the same share should go to the benefit of her family.

It may be observed, also, that the will was evidently drawn by a lawyer, but by one who did not apprehend the precise effect of the language he made use of, and who seems himself to have had a suspicion of the truth. In the absence of precise ideas, or of accurate language, he takes refuge in technicality and redundancy. Commonplace and technicality are curiously intermingled.

In illustration of this want of accuracy, as well as to show that the testator did not, in fact, intend to limit the property described in the second section to the immediate offspring of Mrs. Prowitt, but that the expression "children then living," meant her "lawful issue," I will here refer to some other expressions of the testator in the same section. After disposing of the property during the lifetime of his daughter Mary Prowitt, the testator gives it " to the use of all and every the child or children of my said daughter Mary Prowitt, lawfully to be begotten, then living." It is conceded in the case that Mary Prowitt had three children, all of whom had been begotten and born before this will took effect. It is conceded, also, that the expression, " to be begotten," does not, in law, cut off children theretofore begotten or born. Nevertheless, the expression is inaccurate, as the testator wished his property to be for the benefit of the offspring of his daughter, already begotten and born, as well as those thereafter to be begotten. The claim has been made in a case hereafter to be cited, that under such a clause, the trust would pass only to those begotten previously to the taking effect of the will, and was overruled in connection with the main question raised by the Appellants, both objections being held to be unavailing.

A few lines further on the testator provides, that if more than one child remains to Mrs. Prowitt, "then to them, their heirs and assigns forever, in equal parts to be divided, and to the several and respective heirs of the body and bodies, of all and every such child lawfully issuing." A devise to the heirs and assigns as here first limited carries a fee-simple absolute, while a limitation to them and the heirs of their bodies, as secondly described, creates an estate tail. The two descriptions are used convertibly in the same sentence, and apparently with no idea of a difference in their meaning. This language here, as well as in the sentence commencing "and in case," which I will presently quote, was probably intended to express the idea, that the children not only —i. e., the immediate offspring of Mrs. Prowitt—but the several and respective heirs of the bodies of all and every such child or children, being the lawful issue of Mary Prowitt, should be takers.

The testator then adds, "and I do accordingly ;" that is, as he had just recited, to the heirs of the bodies of Mrs. Prowitt's children, give, devise, &c., to such children as she shall then have living. Again, after reiterating that, upon the death of Mary Prowitt, the estate in trust is for such children as she shall then have living, the testator adds these words : "And in case any such child or children should happen to die before the decease of their said mother, leaving lawful issue, then I do give and devise the part or parts of such child or children so dying unto the several and respective heirs of the body of all and every such child lawfully issuing, and to their several and respective heirs and assigns forever." Here is repeated the same confusion between the heirs and assigns of the children and the heirs of their bodies. The writer was unconscious that the paragraph was anything more than an elaboration of what preceded it. In my judgment, it explains the intent of all the prior premises respecting the descent to the issue of Mrs. Prowitt, and effectually determines their character. It is a clear statement that the estate is not limited to the children of Mrs. Prowitt who shall actually be living at the time of her death—that is, to her immediate offspring—but that her "lawful issue" are the parties intended to take.

It contemplates the death of some or all of the children of Mrs. Prowitt before her decease, and provides that their children should take the same benefit as would have been had by their parents if they had outlived Mrs. Prowitt. I think there is no basis for the argument of the Appellants, that this applies only to a case where some of Mrs. Prowitt's children have died leaving issue, and others have survived her. There is nothing to indicate such an intent, or to justify such a construction.

And again ; before closing this section the testator, in providing that, upon failure of Mrs. Prowitt's issue, the estate should go to his remaining daughters, uses this language : " And in case my daughter Mary Prowitt shall not leave a child living at the time of her death, then I give and devise all the said real estate and property so given and devised in trust for her, and during her natural life, and to her children or child, after her decease, to my daughter Elizabeth Harvey, and my daughter Margaret," &c.

The testator here evidently supposes that when he leaves the estate to the child or children of Mary Prowitt, living at the time of her death, he makes the same disposition as if he had left it to his daughter Mary and her children. He uses the two expressions in the same sentence, and as meaning the same thing. He describes the estate " so given," as being in trust for Mrs. Prowitt during her life, and to " her children or child " after her decease.

This would include the remoter descendants of Mrs. Prowitt. So in the use of the language employed in the fourth section of the will, in which his daughter Margaret is provided for, the same want of precision in the use of the terms, and the same commingling of the different expressions to indicate the intended issue of his daughter, are to be found.

He devises to his daughter Margaret, her heirs and assigns, certain premises on Partition street, in the city of New York, adding, but if my said daughter should " die unmarried, without leaving a child her surviving," then to his daughters, Mrs. Harvey and Mrs. Prowitt. He adds : " But if my said daughter shall die

either before or after my decease, leaving lawful issue," then I do give, &c., "unto such child or children;" and in case my said daughter Margaret shall die "without lawful issue," and either of my daughters Mary or Elizabeth shall be dead, then," &c. The limitation here first made is to "a child her surviving." In the same sentence immediately following, and referring to the same posterity, "lawful issue" is the expression used, and thirdly, "unto such child or children"—still indicating the same descendants. These three expressions are used to indicate the same offspring, and show that the testator used the three expressions convertibly.

It is impossible to avoid this conclusion. The influence of these considerations is not limited to the sections of the will in which the expressions occur.

They shed light upon the whole instrument. In my judgment, they afford very strong reason to believe that in all the dispositions of the will for the benefit of the children of Mary Prowitt, the $5,000, and the $3,750, as well as the real estate, the testator intended her lawful issue, and not her immediate offspring, as the objects of his bounty.

The terms of the second section, authorizing the trustees to lease the brewery property, also confirm this construction. It was made lawful for the said trustees to lease the said property "from time to time, during the life of my daughter Mary Prowitt, and after her decease, during the minority of the said child or children of my said daughter Mary Prowitt, *or who for the time being* shall, by virtue of this my will, be entitled in possession," &c.

Power is here given to have (1) during the lifetime of Mrs. Prowitt, (2) during the minority of her child or children, (3) during the minority of "who," or whosoever, for the time being, should be entitled in possession. This is but a fair construction of this provision. The word "or" is disjunctive, and applies to other objects than those already designated, to wit: the children of Mrs. Prowitt. Such persons must have been the remoter descendants of Mrs. Prowitt.

In relation to the $5,000, it is to be observed that, unlike to the real estate, and unlike to the $3,750, there is no limitation over to any other branch of the family, in the event of the failure of the issue of Mary Prowitt. The language is, to pay the same " unto such children or child as my said daughter Mary Prowitt may have living at the time of her death, in equal parts to be divided, as they shall severally arrive at the age of twenty-one years or marry, whichever shall first happen." It was the intent of the testator not to die intestate as to any part of his property. I have already discussed the subject. Such intent comes strongly in aid of the Respondents' claim, that the terms made use of were intended by the testator to embrace the remote issue of Mrs. Prowitt.

Unless such is the construction, the testator died intestate as to that amount (Royle *v.* Hamilton, 4 Vesey, 439).

In any view of the language of this will, there is no such conflict between its different provisions as requires a determination that one part shall prevail over the other.

The first principle is, that all parts shall be made operative, if possible ; and it is only when the provisions are in irreconcilable conflict, that it becomes necessary to say what part shall stand and what part shall fall. I think the testator intended that the remote descendants should be takers under the sections of the will which I have discussed, if there should be a failure of the immediate offspring of Mrs. Prowitt. The expressions child or children then living, or child her surviving, should be so construed as to carry out this idea. This construction is in harmony with the general intent of the testator, in harmony with good sense and sound principles of justice, and is supported by high authority.

In Hart *v.* Tulk (19 Eng. L. & Eq. 438, 443), the word " fourth" was construed as if it had been dropped, or as if written " schedule," to prevent apparent caprice and injustice, and to make the will sensible and reasonable.

The English statute enacts that the father and grandfather of every poor person shall relieve and maintain such person. In commenting on this statute, Blackstone says (1 Com. 449): " No person is bound to provide a maintenance for his issue, unless

where the children are unable to work," using the expressions "issue" and "children" as synonymous, and both applying to grandchildren as well as to children.

Chancellor Kent says in his Commentaries (4 Kent's Com. 419, b): "Children as well as issue may stand, in a collective sense, for grandchildren, when the justice or reason of the case requires it."

Although arguing strenuously against extending the signification of these words, Mr. Jarman says (chap. 30 of his work on Wills, p. 138): "It should be observed, however, that in a considerable class of cases the word child or children has received an interpretation extending it beyond its more precise and obvious meaning, as denoting immediate offspring, and been considered to have been employed as nomen collectivum, or as synonymous with *issue* or *descendants;* in which general sense it has often the effect, when applied to real estate, of creating an estate tail." He adds: "Where this construction has prevailed, however, it has generally been aided by the context."

In the Earl of Tyrone *v.* Marquis of Waterford (1 De Gex, Fisher & Jones, R. 627), Knight Bruce, Ld.J., says: "The word 'children' is a flexible expression, and according to a correct use of the English language has more meanings than one. Authoritative writers, as well as the habits of educated society, show that an accurate speaker may, without impropriety, use the term 'children' for the purpose of indicating offspring, or descendants, or posterity, in whatsoever degree. If, therefore, in this will, we read the word 'children' as equivalent to 'issue,' or 'descendants,' we read it in one of the senses belonging to it, though not in that which is the most usual; nor are the instances few in which our Courts of Justice, construing testamentary dispositions, have so interpreted it. I agree that the word 'children,' when used in a will for the purpose of indicating relationship, and not age, must generally, or universally, in the absence of an explanatory context, or extraneous evidence showing facts rendering it impossible, or, at least, very highly improbable, that it could have been used as what lawyers call a word of 'purchase,' or as indicating

offspring only in the first degree,.be construed to be a word of
purchase, and to mean only offspring in the first degree." In
Robinson *v.* Robinson (1 Burr. 38), the testator said : " I bequeath
all my real estate to Lancelot Hicks, of Plymouth, during the
term of his natural life, and no longer, provided that he alter his
name, and take that of Robinson, and live at my house at Bochym;
and after his decease, to *such son* as he shall have, lawfully to be
begotten ; and for default of *such issue*, then to my cousin."

It was held by the House of Lords, on appeal, that, notwith-
standing the words " during his life and no longer," Lancelot
Hicks took an estate in tail male, although it was claimed that
the devise to the son of the body of Lancelot Hicks was satisfied
by the birth and death of his eldest son.

In Hodges *v.* Middleton (2 Doug. 431), the testator devised
to Mrs. Middleton all her real estate " during her life, and at
her death to her children ; and, in case of failure of children of
Mrs. Middleton, to George Hodges," &c. Held, that this gave
either an estate tail to Mrs. Middleton, or an estate for life with
the remainder in tail to her children—making the word children
of the same effect as the word issue.

In Doe *v.* Webber (1 Bar. & Ald. 713) the testator gave cer-
tain real estate to her " niece, Mary Hiles, her heirs, executors, ad-
ministrators, or assigns forever.   And my will is, that in case my
niece, Mary Hiles, shall happen to die, and leave no child or
children, then unto my niece Jane Barnes," &c.  Held, that the
words child or children are synonymous with issue.   Lord Ellenbo-
rough says :  " In this case it has been contended that the words
' child or children ' mean issue, and that the first devise is, there-
fore, either converted unto an estate tail by the limitation over
on Mary Hiles' dying and leaving no child or children, in which
case the limitation over is a remainder, and barred by the recov-
ery—or, if the first devise be considered to be in fee, that the
limitation over is too remote, as being an executory devise to take
effect after an indefinite failure of issue."

" It is true," he proceeds, " that the words ' child or children '
may mean issue; and where the intent requires it, the word ' chil-

dren ' has not been confined to the immediate descendants, though that is its ordinary and proper sense, but has been extended to all the descendants, as in Wild's case, 6 Coke, 17 *a.*" &c. " And in the present case the words ' child or children ' must be construed to mean ' issue,' because it is the manifest intention of the testatrix that Jane Barnes should not take by the devise over in exclusion of any of the issue, however remote, of Mary Ililes." This " manifest intention " was made known by the words " child or children " only. The will contains no other expression of the testatrix's intention.

In Doe *v.* Simpson (3 Man. and Grang. 929) the testator devised certain property to his son, Dr. John Simpson, his heirs and assigns forever, and added : " But if it shall happen my said son, Dr. J. S., shall die without leaving any child or children, in that case I give and devise " unto Mary and others, who are his illegitimate offspring. After making certain other provisions, he adds, that if his present wife should leave no issue to inherit certain other property named, he gives it to Mary and others, " as all the other property above-mentioned given and bequeathed to my said son, Dr. J. S., in case he die without issue." Lord Denman, Ch.J., cites with approval the preceding observations of Lord Ellenborough, and adds, in relation to the clause last cited : " We consider this an interpretation by the testator himself of the word children, as used by him in the previous part of the will. It is as if he had said, that, by the previous part of his will, he had given the property in dispute to his five natural children, only in the event of Dr. John Simpson dying without issue; and he had not, in fact, said this unless the word children be read, as we think it must, as being synonymous with issue."

In Hewit *v.* Ireland (1 P. Williams, 426) the objections were twofold: first, that children " to be begotten " did not include children in existence at the testator's death ; secondly, that the remote descendants could not take. Lord Chancellor Parker described the objections as " alike " and " equally unreasonable," and annulled them both.

In Parkman *v.* Bowdoin (1 Sumner's R. 368) a devise was to A.

for life, and after her death to her second son B., and to his law-fully-begotten children in fee-simple forever; but in case he should die without lawfully-begotten children, to the other son of A. (C.), and to his lawfully-begotten children in fee-simple forever. At the time of making the will B. had no children. Held, that B. took a fee tail, with remainder to C. on an indefinite failure of issue of B. Judge Story, in deciding the case, examines all the authorities, from Wild's case (6 Co. R. 17) onwards, holding the word " children " to be a word of limitation, and not of purchase. He says: " To give any just effect, then, to the original devise, as well as to the devise over, the word ' children ' must be construed as meaning issue or heirs of the body. And, although in its primary sense, the word ' children' is a descriptio personam who are to take, there is not the slightest difficulty in giving it the other sense, where the structure of the devise requires it. There are many authorities to this effect in cases analogous to the present."

The learned Judge then examines and reviews the case, a por-tion of which I have already called attention to. These au-thorities fully establish the two propositions for which the Respon-dents contend:

First. That the term " children" may include issue however remote, and will be held so to include whenever the reason of the thing demands it.

Secondly. In case of a contingent future gift to the children of a first taker, followed by a limitation over for want of such, the presumption is in favor of the first taker's posterity to her remoter descendants, in preference to the donee over.

I have examined with care the cases cited by the learned counsel for the Appellants, in the elaborate brief submitted with his argument.

None of them seriously conflict with the general views I have laid down, although some of them would place greater restrictions upon the rule construing the terms in question than would others. They all admit, as does the learned author of the work on Wills above quoted, that when the evident intention of the testator re-

quires it, or when the estate would fail if such were not the construction, that the words child or children are to be construed as meaning issue or remote descendants. Limiting the rule to this extent, the Appellants' case cannot be sustained, as I have endeavored heretofore to establish. The judgment should be affirmed, with costs, to be paid to both parties from the fund.

GROVER, J.—The only inquiry in this case is, in what sense did the testator, Thomas Mackaness, use the words child and children in limiting the remainder of real estate devised to trustees for the benefit of his daughter, Mrs. Prowitt, for life; and also in his bequest of certain sums of money which the testator directed to be invested, and the interest paid to her during her life?

If the words were used in the ordinary popular sense, it is clear that both the real and personal estate so devised, upon the death of Mrs. Prowitt, passed to her two nieces, whose interest and rights are represented by the Appellants, and not to her grandchildren, whose interest and rights are represented by the Respondents.

The presumption is, that language is used in wills in its ordinary sense, unless from an examination of the entire will it appears that it was used by the testator in a different sense; and when this appears from such examination, the language is to be construed in the sense in which it was used by the testator. This follows from the rule that the intent of the testator is to be carried into effect, when consistent with the rules of law; and that this intent must be determined by the language of the instrument, read in the light of the extrinsic facts in reference to which the language was used by the testator. It is not disputed but that child and children, in their ordinary use, include only descendants in the first degree, and that descendants in the second or more remote degree do not come within such description.

It is therefore incumbent upon the Respondents to show that in the will in question the words, in limiting the property after the death of Mrs. Prowitt, were used in a different sense. It is

claimed by the Respondents that, for the purpose of declaring the limitations of the property in question, it was used as synonymous with issue. This, I think, clearly appears, as to the real estate, from the clause limiting the same. As to this, the testator, in the second clause of his will, after devising the real estate to trustees in trust for his daughter Mary Prowitt for life, proceeds: " And after the decease of my said daughter Mary Prowitt, to the use of all and every the children of my said daughter Mary Prowitt, lawfully to be begotten, then living; if one child only, to him or her the whole, and to his or her heirs and assignees forever; and if more than one child, then to them, their heirs and assignees forever, in equal parts to be divided, and to the respective heirs of the body and bodies of all and every such child and children lawfully issuing." The testator then repeats the devise to her child and children, as above, and adds: "And in case every such child or children should happen to die before the decease of their mother, leaving lawful issue, then I do give and devise the part or parts of such child or children so dying unto the several and respective heirs of the body and bodies of all and every such child and children lawfully issuing, and to their several and respective heirs and assigns forever."

He then gives power to the trustees to lease the property during the minority of those entitled, and then further adds: " And in case my said daughter Mary Prowitt shall not have a child living at the time of her death, then I give and devise all the said real estate or property so given in trust," &c., to his two other daughters.

It is clear that in the above clause the testator used the words, child living at her death, as equivalent to issue living at that time. He had carefully provided that, upon the death of any child leaving issue, during the life of the mother, the share of such child should go to the issue. It would be absurd to suppose that his design was, that in case all the children died during the life of the mother, none of the issue should take, but that if one child survived the mother, all the issue of deceased children should take. That is not the fair import of the language employed by

the testator.  I think it clear that the grandchildren of Mrs. Mary Prowitt take the real estate under the will, to the exclusion of her nieces—daughters of her two sisters.

As to the sums of money invested for the benefit of Mrs. Prowitt for life, it is not quite so clear.  This is bequeathed to her child or children at her decease, the same as the real estate, and in case she has no child living at the time of her death, it is given to her sisters, in like manner, without any provision that in case of the death of any of her children during her life, leaving issue, such issue should take the share that would have belonged to the parent in case such parent had survived Mrs. Prowitt.

Upon a close examination of the fourth clause of the will, in which the testator makes provision for his daughter Margaret and her children (if any), it will be found that child, children, and issue are used by the testator as synonymous to convey the same idea, and these words are used in this sense apparently to avoid tautology.  This, I think, shows that the words " child living" were, in other parts of the will, used in the sense of issue living, and that the idea of the testator in devising this money to the sisters, &c., in case Mrs. Prowitt had no children living at the time of her death, was that if she had no issue living at that time; but that if she had issue living, such issue should take the money.

The judgment appealed from should be affirmed.

All concur.

Affirmed.

JOEL TIFFANY,
State Reporter.
